IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

VITO PELINO,  )
    Petitioner,  )
        )
v.  )  2:16-cv-796
        )
ROBERT GILMORE, et al.,  )
    Respondents.  )

MEMORANDUM and ORDER

    Vito Pelino by his counsel has presented an amended petition for a writ of habeas corpus (ECF No.17). For the reasons set forth below, the petition will be dismissed, and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

    Pelino is presently serving a sentence of life imprisonment plus an additional one to two year sentence imposed following his convict by a jury of first degree murder and abuse of a corpse. This sentence was imposed on June 13, 2012 at No. CP-02-2578-2011 in the Court of Common Pleas of Allegheny County, Pennsylvania.[1] An appeal was taken to the Superior Court of Pennsylvania in which the issues presented were:

> The trial court committed reversible error when it did not declare a mistrial after Commonwealth witness Corey Roberts testified that he and Pelino talked about killing someone else before and exacerbated the error by highlighting it to the jury with an unrequested cautionary charge.
>
> The trial court erred in not giving the heat of passion-voluntary manslaughter charge.
>
> The trial court committed reversible err[or] in admitting into evidence and displaying to the jury unnecessary gruesome color photos of body parts of the deceased.[2]

---

[1] See: Petition at ¶¶ 1-6.
[2] See: Exhibit 4 to the answer.

The judgment of sentence was affirmed on August 27, 2013 and review was not sought from the Pennsylvania Supreme Court.[3]

A timely post-conviction petition was filed on July 17, 2014. The latter petition was dismissed without a hearing on March 31, 2015[4] and an appeal was filed in which the issue raised was:

> The trial court erred in dismissing the PCRA petition without a hearing where petitioner made a clear showing that several allegations of ineffective assistance of counsel raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief.[5]

On October 14, 2015 the judgment of sentence was affirmed.[6] Leave to appeal to the Pennsylvania Supreme Court was denied on April 12, 2016.[7] The instant petition was filed on June 14, 2016 and amended on November 30, 2016 (ECF No.17). The Commonwealth concedes that the petition here is timely.[8]

In his amended petition, Pelino claims he is entitled to relief on the following grounds:

1. Trial counsel was ineffective in
    a. Failing to move for severance;
    b. Failing to prepare petitioner to testify;
    c. Failing to call certain fact and character witnesses;
    d. Failing to present evidence of self-defense;
    e. Failing to object to prosecutor's prejudicial remarks in her closing, and
    f. Violating petitioner's right to a public trial.
2. Petitioner was denied an evidentiary hearing on ineffective assistance of trial counsel.
3. Post-conviction counsel was ineffective for failing to properly raise petitioner's post-conviction claims and effectively argue these claims on appeal.[9]

---

[3] See: Petition at ¶ 9.
[4] Id. at ¶ 11.
[5] See: Exhibit 10B to the answer.
[6] See Exhibit 11 to the answer.
[7] See: Exhibit 9 to the answer at p.3.
[8] See: Answer at p.9.
[9] See: Petition at ¶12.

2

The background to this prosecution is set forth in the October 14, 2015 Memorandum of the Superior Court:

> On the evening of February 12, 2011, [the victim] was socializing with a group of friends at a bar …. Later that night [the victim] met [Appellant's sister, N.T.]. [N.T.] had come to the bar with [Appellant] after getting off work and having several drinks[.] … [The victim] and [N.T.] talked, danced and drank for a couple of hours…. [Around 2:00 on February 13th, the victim's friend drove the victim] and [N.T.] to [N.T.'s] residence and returned to the bar…. [Appellant had] agreed to provide [the victim] with a ride home from [N.T.'s residence] after he took [his friend, Corey] Robert home [because the victim and Appellant] resided [in the same community].
>
> [Appellant] arrived at [N.T.'s] residence at approximately 3:00 a.m. and the three of them drank and talked amicably inside. [The victim] at some point excused himself to use the bathroom and [N.T.], by that time intoxicated and tired, told [Appellant] that she needed [the victim] to be out of the residence because her boyfriend would be coming home soon. [Appellant] informed [the victim] of the circumstances, and although [the victim] had been excited about the potential of "hooking up" with [N.T., Appellant] persuaded [the victim] to leave with him.
>
> [Appellant] and [the victim] left and drove into [their community] in [Appellant's] vehicle. During the ride [the victim] began talking about [N.T.] in a manner that [Appellant] perceived as disrespectful…. A verbal argument ensued and [Appellant] stopped the vehicle [and] the argument escalated between the two men. [Appellant] then grabbed a knife that he had beside the driver's side door and began to stab [the victim].
>
> [Appellant] inflicted 72 stab and incised wounds on [the victim], stabbing him until he was certain [the victim] was dead. Many of the incised wounds were defensive wounds to [the victim's] hands; and the most lethal wounds were stab wounds to [the victim's] neck, which transected his left carotid artery and perforated his trachea, as well as a stab wound to the back which penetrated his lung.
>
> … [Appellant] drove home to his apartment … which was across the street from his mother's home. He parked his vehicle in the back of his mother's house and pushed [the victim's] body onto the back seat. [Appellant] went into his apartment and retrieved a black bed sheet, and returned to the vehicle to cover up [the victim's] body.

> [Appellant] returned to his apartment, showered, discarded his blood
> soaked clothing and unsuccessfully attempted to contact Corey Robert
> to solicit his advice and aid []. … [T]hat evening [Appellant]
> contacted Corey Robert and told him he needed his help….
> [Appellant] picked Robert up [and the two men went] to the basement
> of [Appellant's] mother's home. As they entered the basement,
> [Appellant] told Robert that he 'killed that guy last night', and asked
> Robert if he saw a sign above the door that stated, 'dead nigger
> storage.'
>
> Once they got into the basement, [Appellant] showed Robert a
> garbage bag, and a large blanket which was tied into a knotted
> packing layer in a puddle of blood. Both the garbage bag and the
> blanket contained dismembered body parts of [the victim].
> [Appellant] acknowledged that he had cut [the victim] up with a saw
> and put the parts in the garbage bag and blanket. [Appellant] had cut
> [the victim] into six parts: head, torso, two arms, and two legs.
> [Appellant] had discarded the knife he used to stab [the victim] and
> the saw he used to dismember him into the nearby Allegheny River.
>
> [Appellant] and Robert loaded[ the victim's] dismembered body into
> [Appellant's] vehicle. [Appellant] drove to a remote and heavily
> wooded area … where they loaded the garbage bag and bed sheet into
> a discarded wheel barrow…. They traveled on a path approximately
> 100 yards into the woods to the edge of a hillside where [Appellant]
> pulled out the dismembered body parts [from the garbage bag and bed
> sheet], took off any remaining clothing, and [he] and Robert threw the
> body parts over [a hillside]. [Appellant] gathered up the clothing,
> garbage bag and bed sheet and they returned to [Appellant's
> apartment] where they parted company….
>
> A missing person's investigation … led the police to interview
> Cor[e]y Robert. Robert eventually gave police a detailed account of
> the events on February [13th] and took police to the wooded area
> where the dismembered body of [the victim] was recovered.
>
> [Appellant ] was arrested[.].[10]

Petitioner's first contention is that trial counsel was ineffective in several respects. In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to the effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective

---

[10] See: Exhibit11 to the answer at pp.1-3.

standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Rainey v. Varner, 603 F.3d 189,197 (3d Cir.2010) cert. denied 131 S.Ct. 1673 (2011). As a result, if a petitioner fails on either prong, he loses. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006).

In this regard, petitioner's first issue is that counsel was ineffective for failing to move for severance of the homicide and abuse of a corpse charges.[11] When called upon to review this allegation, the Superior Court observed that beyond the "bald" allegation, petitioner never developed his argument and for this reason, the "claim is waived"[12] and for this reason procedurally defaulted here. In Coleman v. Thompson, 501 U.S. 722,750 (1991), the Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.

Rule 563 Pa. R.Cr.P. provides that:

> Two or more offenses … may be charged in the same information if:
>
> (1) The evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or
> (2) The offenses charged are based on the same act or transaction…

---

[11] This issue is raised as a claim of ineffective assistance of post-conviction counsel for failing to raise the issue of trial counsel's ineffectiveness for failing to move for severance. See: Martinez v. Ryan, 566 U.S. 1 (2012).
[12] See: Exhibit 11 at p.12.

5

As a matter of state procedural law the joinder of the offenses for trial is not appropriately addressed in a federal petition. Swarthout v. Cooke, 131 S.Ct. 859 (2011). For this reason, counsel cannot be deemed to have been ineffective for failing to raise a meritless claim. Real v. Shannon, 600 F.3d 302, 310 (3d Cir. 2010). [13] Thus, the claim is without merit.

Pelino's second issue is that counsel was ineffective by failing to prepare him to testify. While raised in the post-conviction appeal, the Superior Court deemed the issue waived and thus it is defaulted here.[14]

Nevertheless, at trial petitioner testified that he acted in self-defense.[15] Specifically, he testified that on February 11, 2011 he was at Cheers bar with his friend Corey, his sister and an individual known as C.J. (TT.374); that after two drinks they went to the Hula bar at around 10 p.m. (TT.376); that they were drinking when they encountered the victim who was a stranger to them (TT.376-377, 395); that his sister left the bar prior to 1:30 a.m. and texted him to meet her and some friends at her house for a drink (TT. 378); that when he arrived at his sister's the victim was there (TT.379); that his sister informed him that the victim had to leave her apartment before her fiancé returned home (TT.380-381); that the victim and he left his sister's house and drove away in his car (TT.382); that the victim made comments about "trying to hit" on his sister (TT.384, 397); that he stopped driving to remove the victim from his car (TT.385); that things became heated (TT. 387); that the victim punched him and had a knife (TT.387); that he was cut with the knife (TT.387-398); that he grabbed the knife from the victim and as he drew his arm back he hit the victim with the knife (TT. 388-389, 399); that acting out of panic he continued to inflict stab wounds on the victim (TT. 389, 400, 414, 410); that he did not report the incident to the police because he believed they would not believe his version of events (TT. 390); that he drove to his apartment and parked his vehicle behind his mother's house where he pushed the body onto the back seat and covered it with a sheet (TT. 391, 401, 403); that he went to his apartment and showered and changed his clothes (TT. 391); that he subsequently borrowed his mother's car and went to visit his young children and returned home at about 3:00 p.m. (TT. 393); that he replaced his rear car seats and dismembered the victim (TT. 394); that he threw

---

[13] We note parenthetically that even if the abuse charge had been severed for trial, it is difficult to conceive of how the homicide trial could have gone forward without the jury becoming aware of the gruesome details of the killing and dismemberment.
[14] See: Exhibit 11 to the answer at pp. 9-10.
[15] All record references marked "TT" refer to the transcript of the trial held from March 13, 2012 through March 15, 2012.

6

both the knife and the saw used to dismember the victim into the river (TT. 397); that he did not carry a knife in his car (TT. 404); that based on other evidence it appeared that he had stabbed the victim 72 times (TT. 411); that once he had secured the knife he did not realize that the victim was defenseless (TT. 413) and that after he inflicted the first stab wound, the victim was not resisting his attacks (TT. 414-416).

Even if not procedurally defaulted, this claim is meritless. The essence of his argument here is that counsel both failed to prepare him and failed to call character witnesses to testify in his behalf. Based on the petitioner's own testimony which corroborated the testimony presented at trial, the only issue was one of credibility, an issue which is solely entrusted to the fact finder and presumed correct, 28 U.S.C. §2254(e)(1); Roland v. Vaughn, 445 F.3d 671 (3d Cir. 2006), and deference is accorded to those findings. Felkner v. Jackson, 131 S.Ct. 1305 (2011). Thus, there is no basis to conclude that counsel was ineffective in preparing petitioner to testify.

Petitioner next contends that counsel was ineffective for "failing to call certain fact and character witnesses" in defense and failing to offer self-defense evidence. Specifically, petitioner contends that counsel was ineffective in failing to call Cydney DeDominicis to testify to rebut the trial testimony of the Commonwealth's primary witness Corey Robert.[16] In reviewing this issue, the Superior Court wrote, "neither DeDominicis' statement nor Appellant's PCRA petition set forth evidence to demonstrate that trial counsel knew or should have known of this witness, or the substance of her testimony."[17] Thus, there is no basis to support the claim or ineffectiveness.

Petitioner also contends that trial counsel was ineffective in failing to call Sarah Mattern who would have testified about how "she bandaged [petitioner's] hands after the killing…" (See: Affidavit of Sarah Mattern, attached to PCRA petition (Ex. 6 to the answer)("I don't remember what day it was but Vito came over… and he had duck tape on his hand. I yelled at him and told him he needs to clean it and put a band aide on it. So I cleaned it and wrapped it up…")). This, petitioner contends, would have corroborated his claim that he acted in self-defense. In reviewing this contention, as noted above, the Superior Court determined that

---

[16] See: Petitioner's brief (ECF No.30) at p.13.
[17] See: Exhibit 11 at pp. 17-18. We observe that attached to the petition is a December 11, 2013 affidavit of DeDominicis which was not before the trial or appellate courts. Cullen v. Pinholster, 131 S.Ct. 1388, 1399 (2011)("state court decisions are measured against this Court's precedents as of 'the time the state court renders its decision.'"). In her December 11, 2013 statement which was available to the post-conviction courts, DeDominicis refers to petitioner's "caring personality" and the fact that Corey had "lie[d] to many people in order to get what he wanted and to stay out of trouble." (Ex. D to the amended petition).

7

petitioner failed to present any evidence that trial counsel was aware of these witnesses at the time of trial.[18] This factual determination is entitled to a presumption of correctness, 28 U.S.C. §2254(e)(1); Burt v. Titlow, 134 S.Ct. 10 (2013), and there is nothing in the record to dispute this finding. Accordingly, counsel cannot be deemed to have been ineffective in failing to call upon Mattern to testify.

In a similar manner, petitioner argues that counsel was ineffective in failing to call his car mechanic to testify although counsel was aware that the mechanic "would have testified that … [the automatic door unlock] was not working at the time of the incident, meaning that Appellant's car doors had to be unlocked manually."[19] As the Superior Court wrote, this testimony, if presented, would have warranted a conclusion not that the petitioner could have escaped because the doors were permanently locked but only that the doors would have had to be manually unlocked as opposed to unlocking automatically.[20] This testimony would not have demonstrated an inability to escape, and thus not bolstered petitioner's claim of self-defense. Accordingly, counsel cannot be deemed to have been ineffective in failing to raise the issue.

Petitioner next argues that counsel was ineffective in failing to object to the prosecutor's closing argument in which she described the petitioner as a "cold-blooded killer." In this regard, in her closing the prosecutor argued:

> Ladies and gentlemen of the jury, you have to ask yourself what kind of person can stab another human being 72 times and then dismember his body with a saw and snap his bones and then throw away his body like a piece of trash. I submit to you that the evidence that we showed to you would say a cold-blooded killer, Vito Pelino. (TT. 431).

She continued:

> When you were listening to him yesterday you have to ask yourself – you listened to his voice and watched his demeanor. He didn't once say that he was remorseful or sorry for what he did. It was all about me, me, me. I didn't want to get in trouble. I didn't want the police to find out. I didn't want this, I didn't want that, not poor William King.
>
> He said that he had no good reason for taking him back to his mother's basement after he let William King lay in his car, by the way, and play with his kids. Does that sound like someone that is

---

[18] Id.
[19] See: Exhibit 11 to the answer at p.16.
[20] Id.

8

panicked? Someone who panicked doesn't leave a dead body in their car and go play with their children and later that night get the saw out and dismember a human body into six pieces cutting his head and arms and legs. I don't say this to upset you but this is the evidence that Vito Pelino provided us with. I didn't want to show you those pictures. He took him and threw him away like trash. He said I had to dismember William King's body to hide it in different places so it wouldn't be found. I asked him if that is the reason, why did you put his body in one place? He remembered he couldn't answer that question. I submit because he is a cold-blooded person who enjoyed what he did after he killed William King. (TT. 435-436).

Petitioner now claims that counsel was ineffective in failing to object to this closing. In Greer v. Miller, 483 U.S. 756,765 (1987) the Court wrote that to justify relief, the prosecutor's closing argument had to "so infect[t] the trial with unfairness as to make the resulting conviction a denial of due process." That is, the remark must have been so prejudicial as to violate due process. Werts v. Vaughn, 228 F.3d 178, 198 (3d Cir. 2000). After hearing the factual testimony including that of the petitioner wherein he corroborated the gruesome facts but challenged the motive, the prosecution's referencing the crime as a "cold-blooded" event is more than supported by the record. For this reason, there was no basis for counsel to object, and counsel cannot be deemed to have been ineffective in failing to raise a meritless objection. Real v. Shannon, supra.

Petitioner next argues that counsel was ineffective in failing to assert the petitioner's right to a public trial. Specifically, petitioner contends that counsel was ineffective when he informed petitioner's mother's fiancé, Natalia, "that jury selection 'wasn't open to the public and you don't need to be there.'"[21] There is no doubt that with only very narrow circumstantial exceptions the jury selection process is open to the public. Presley v. Georgia, 558 U.S. 209 (2010). However, the Natalia affidavit executed on November 14, 2016 never surfaced before the amended federal petition was filed, and for this reason could not have been considered by the state courts. What was a part of the record before the Superior Court in the post-conviction appeal was that "the eight witness affidavits attached to Appellant's PCRA petition make no mention of being excluded from jury selection by either trial counsel or the trial court."[22] Thus, this filing arose long after the trial and is not properly considered here. Cullen v. Pinholster, supra. For this

---

[21] See: Affidavit of Domenic Natalia which appears as Exhibit C to the amended petition.
[22] See: Exhibit 11 to the answer at pp.20-21.

9

reason counsel cannot be deemed to have been ineffective for failing to raise a non-existent issue. Real v. Shannon, supra.

In Weaver v. Massachusetts, 582 U.S.    (2017), the Court wrote:

> When a defendant first raises the closure in an ineffective assistance claim, however, the trial court is deprived of the chance to cure the violation either by opening the courtroom or by explaining the reasons for the closure…
>
> [A] different standard for evaluating a structural error [exists] depending on whether it is raised on direct review or raised instead in a claim alleging ineffective assistance of counsel (Slip Opinion at pp.13-14).

In the present case, like in Weaver, the structural error was not raised until the post-conviction proceedings, and the burden of demonstrating prejudice then falls on the petitioner. In the present case, the petitioner has clearly failed to meet this burden since he has not made any demonstration arising from this exclusion based on the advice of trial counsel.

Petitioner next contends that he was impermissibly denied a hearing on his claim of ineffective assistance of counsel. As noted above his claims of ineffective assistance are meritless, nevertheless as a matter of state procedural law, it is not a matter properly raised in a federal proceeding. Swarthout v. Cooke, surpa. Additionally, we observe that the decision of whether or not to hold a hearing on a post-conviction petition rests with the sound discretion of the court. Pa.R.Crim.P. 909(B)(2).

Petitioner's final argument is that post-conviction counsel was ineffective in failing to adequately present and argue his post-conviction claims on appeal. As a general rule, "the ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be ground for relief in a proceeding arising under section 2254." 28 U.S.C. §2254(i). An exception arises under the holding in Martinez v. Ryan, supra. which held that in states like Pennsylvania where claims of ineffective assistance of trial counsel cannot generally be raised until the post-conviction proceedings, post-conviction counsel may be deemed ineffective for failing to raise those claims. Such is not the case here as the opinion of the Superior Court clearly reflects that the claim of ineffective assistance was raised during the post-conviction proceedings where the questions presented to the Court "where [Appellant] raised

several genuine issue[s] of fact[] regarding ineffective assistance of trial counsel…"(Ex.. 11 p.5). For this reason this final allegation here is likewise without merit.

Because the petitioner has failed to demonstrate that his conviction was secured in any manner contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, 28 U.S.C. §2254(d)(1), he is not entitled to relief here.

Accordingly, the petition of Vito Pelino for a writ of habeas corpus will be dismissed, and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

An appropriate Order will be entered.

Filed: July 6, 2017                      s/ Robert C. Mitchell
                                                                United States Magistrate Judge

ORDER

AND NOW, this 6th day of July 2017, for the reasons set forth in the foregoing Memorandum, the amended petition of Vito Pelino (ECF No. 17) is dismissed, and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability is denied.

    s/ Robert C. Mitchell
    United States Magistrate Judge